**Shirlette L. BOWMAN et al.**

v.

**COUNTY SCHOOL BOARD OF CHARLES CITY COUNTY, VIRGINIA, et al.**

Civ. A. No. 4265.

United States District Court
E. D. Virginia,
Richmond Division.

Dec. 12, 1968.

Hill, Tucker & Marsh, Richmond, Va., for plaintiffs.

Frederick T. Gray, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

This matter now comes before the Court by reason of plaintiffs' motion for further relief filed on June 21, 1968.

On July 10, 1968, this Court directed that the defendants file with the Court a plan for desegregation of the public school system of Charles City County,

Virginia, which would bring them in compliance with the May 27, 1968 decision of the United States Supreme Court in the case of Green v. County School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716.

On July 30, 1968, the defendants filed a report with the Court, stating that the plan under which they were then operating, i. e. "freedom of choice", was the only reasonable available method which would result in a great degree of integration, and contended that such a plan was in compliance with the mandate of the *New Kent* case, supra.

The plaintiffs excepted to this report and the matter then came on for hearing on November 12, 1968, at which time defendants in open court moved to dismiss plaintiffs' motion for further relief, and the Court deeming it proper so to do, will enter a separate order denying plaintiffs' motion.

At the aforesaid hearing the Court heard from the witnesses, considered the exhibits and interrogatories, and determined that in order to more fully comprehend the existing situation, the matter would be continued and, accompanied by counsel, would visit and inspect the defendants' administrative offices and each of the schools presently being operated by the defendant Board.

The Court finds from all of the foregoing that there is presently enrolled in the Charles City School System a total of 1869 students, and that the defendant Board operates four separate school facilities.

■ Bearing in mind that there is a burden upon the defendant Board in all school cases to take whatever steps may be necessary to convert to a unitary school system, it is the defendants' burden to come forward with a plan which promises a meaningful and immediate progress toward that end; and if any such plan does not do that, there is cast upon the defendant Board the burden of establishing that additional time may be necessary to insure compliance

with the mandate of the law at the earliest practicable date.

In the instant case, defendants contend they are in compliance with that mandate; while plaintiffs contend that the freedom of choice plan heretofore approved by this Court has not worked to bring about the desegregation of the public schools of the county.

■ In reaching a conclusion, this Court feels it incumbent to consider, amongst other things, the defendants' method of administration, the physical plants, the personnel, the transportation problems, if any, the attitude and effort of the patrons, the possibility of revising districts, the combining of classes or schools, the geographical location of not only the school plants but the students, and numerous other factors, in order to determine intelligently whether or not the said defendants are operating their schools in accordance with the mandate of the law and, if not, to determine what steps may be necessary to establish meaningful assurance of prompt and effective disestablishment of any dual system.

■ In addition to the factors aforementioned, there immediately comes to mind an initial determination to be made by the Court, assuming arguendo that there is a dual system being operated, as to whether or not the defendants are acting in good faith and whether any proposed plan has a real prospect for dismantling any State imposed dual system at the earliest practicable date. The Court must bear in mind that all school officials have a continuing duty to take whatever action may be necessary to create a unitary non-racial system. See Green v. County School Board of New Kent County, supra; Bowman v. County School Board, etc., 4 Cir., 382 F.2d 326 at 333.

The Court finds that Charles City County is perhaps unique in that it is made up of three ethnic groups, Negro, White and Indian, the vast majority of the population of the county being of

the Negro race. The county is situate within commuting distance of the metropolitan area of Richmond, one of the most populated areas in the State. The School Board, which is composed of three citizens who hold appointed positions as members thereof, consists of two members of the White race and one of the Negro race. At the hearing, one of the members testified that she did not feel that freedom of choice was, as she put it, "working." The Court finds, however, that in July of 1968 the County School Board unanimously adopted a resolution stating that freedom of choice had brought about a considerable amount of school desegregation in the county. In spite of the testimony of the individual member of the School Board, there can be no doubt but that there has been excellent cooperation between the members of all races in the operation of the entire county. There are both Negro and White members on the Tax Board, Board of Supervisors, the Draft Board, the School Board, and apparently all other facets of county government.

The Court finds there was an increase in the enrollment of White students in the schools in September 1968. Approximately 39 White students, residents of the county, presently attend private schools. There are presently enrolled in the four schools operated in the county a total student body of 1869, of which 1531 are of the Negro race, 184 of the Caucasian race, and 154 of the Indian race. A physical examination of each of the school plants evidences an effort at maintaining adequate facilities for all students.

One of the schools, Samaria, has a physical capacity of approximately 150 students, and is now attended by 116 students in grades 1 through 7, composed of 111 students of the Indian race, 3 of the Negro race, and 2 of the White race. This school was formerly an all Indian school, and is located in the northwest section of the county where the majority of the members of the Indian race reside. The faculty is composed of one member of the White race, and four of the Indian race.

The Barnett School, which is likewise an elementary school having grades 1 through 7, is located in the southwest sector of the county and has a maximum capacity for 600 students. There are presently enrolled therein 566, all members of the Negro race. The faculty at Barnett is made up of 22 Negro teachers.

Charles City High School, which was built in 1948, is located in the southwest quadrant of the county and contains grades 1 through 12 combining elementary and high school. There are 303 students enrolled therein and it normally has an enrollment of approximately 300 students. The school, while generally adequate, appears to have inadequate gymnasium facilities. The elementary section of the school is attended by 109 students of the White race, 44 of the Negro race, and 1 of the Indian race. In the high school section there are 73 White students, 34 Negro students and 42 Indian students. The faculty at Charles City High School consists of 13 members of the White race, 2 of the Indian race, and 2 of the Negro race, one of whom is there half the time.

The largest and most modern of the schools is the Ruthville High School, which is located approximately four to five miles from the Charles City High School. It is presently operating at its maximum capacity and contains grades 1 through 12, with a total enrollment of 886 students, one of whom is of the White race, one of whom is of the Indian race, and the balance of the Negro race. The faculty is composed of 2 White teachers and 40 Negro teachers, one of whom divides time with Charles City High School. Ruthville has facilities for shop classes, including special mechanics, which are attended by certain of the White students from Charles City High School. It would appear that the Ruthville High School's library is inadequate. The Court finds that the curriculum in each of the high schools is substantially the same.

The Court finds that there have been exceptional scholastic accomplishments by the students of all of the schools. The' contracts which the School Board enters into with the various teachers contemplate the teachers being assigned to such school as the superintendent or the School Board deems appropriate, although in practice the Board has not exercised in full its contractual rights in this regard, but has to some extent permitted the teachers to indicate their preference of schools and they apparently are assigned accordingly.

The Court recognizes that there are problems regarding a county rural in nature which is contiguous to a metropolitan area, which in effect creates a competitive market for teachers. The fact that there have been exceptional scholastic accomplishments by the students is indicative of the dedication of the faculties of all of the schools in Charles City County, and is a material factor in the Court's ultimate conclusion.

The county is made up of three districts—Chickahominy, which does not have a school plant in its geographical boundaries, has a total of 216 students of whom 47 are White and 169 Negro; in Tyler district there are located the Ruthville and Charles City schools, and the composition of the students residing in that district are 43 White, 510 Negro, and 84 Indian; in the Harrison district there are located the Barnett and Samaria schools, and the composition of the students residing in that district is made up of 88 White, 860 Negro and 72 Indian.

The Court finds that neither high school plant, as presently constituted, is suitable for all of the high school pupils in that the present enrollment of the high school pupils in both schools is 621. The Court's view of the physical plants leads the Court to the conclusion that any such merger of the student bodies into the Ruthville facilities would result in inadequate library facilities, shop facilities, home economics facilities, and facilities for commercial classes. The Charles City High School is much too small for any such merger, since its maximum enrollment is roughly 300.

The Court finds there are no predominantly White or Negro areas in Charles City County insofar as the residences of the population are concerned. People of all of the races reside throughout the entire county, with the exception of Chickahominy District which apparently does not have any students of the Indian race residing therein.

The Court finds that every White student in the county presently attends an integrated school.

■ Defendants argue that abandonment of freedom of choice would lead to the mass withdrawal of White children from the public schools. While there was evidence to this effect, there was also evidence to the effect that more than 40% of White families questioned by an interested citizen on the subject did not even see fit to reply. The Court does not deem it necessary to make any finding in this regard, for even if the Court found that without freedom of choice the White students would leave the school system, under the law this does not constitute a viable argument. The application of Constitutional principles cannot be applied by consensus, nor can those principles be allowed to yield simply because of disagreement with them. See Monroe v. Board of Commissioners of the City of Jackson, Tenn., et al., 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733, decided by U. S. Supreme Court May 27, 1968.

■ In the instant case, each of the schools in the system serves the entire county. There is no segregation practiced in reference to the school buses or school activities. The lack of a completely integrated student body in each of the schools is caused, not by the failure of school officials to take affirmative steps toward the conversion to a unitary system in which racial discrimination would be eliminated, root and

branch, as required by the Green v. County School Board of New Kent County case, but more by the fact that the racial composition of the residents of Charles City County is such as to make it impossible to have any significant proportion of White students in each of the schools.

The Court further finds it necessary in the interest of all of the students, and consistent with what the Court finds to be the good faith compliance of the school officials to establish a school system in which racial discrimination is eliminated, to approve in essence, subject to a more rigid implementation, certain aspects of the School Board's Plan of Desegregation approved by this Court by its order of July 15, 1966.

The School Board must accept its responsibility in reference to the assignment of teachers to the end that the matter of where they shall teach shall not be left solely to the teachers' desires. The Court cannot help but feel, and so finds, that there would be a further implementation by the students of the majority race of Charles City County in their choice of schools if there were fewer teachers of that race in the Ruthville and Barnett schools and more teachers of the White race.

It is suggested by the defendants that the Court in the *Brown I* case (Brown v. Board of Education of Topeka) 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 was concerned with education and minority groups, and this Court ascribes to that belief. It is immaterial of what race a minority group happens to be. The ultimate aim is to convert to a unitary system in which racial discrimination is eliminated, root and branch.

In this instance the Court finds that freedom of choice as exercised by the residents of Charles City County is leading to the abolition of a system of segregation.

The School Board, however, is reminded of their continuing duty to see to it that all students are encouraged to participate in all facets of school activities in a non-discriminatory manner.

The Court concludes that there are no other reasonably available "other ways" than that which are now being used and will be implemented by the Court's order to achieve a unitary non-racial school system.

An appropriate order in accordance with this memorandum will be entered.